# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **CARLOS L. COLDON,** | ) | |
| **# 158388,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:17-cv-01296** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **v.** | ) | |
| | ) | |
| **TAMMY RUCK,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Carlos L. Coldon, also known as Robert J. Froster, an inmate of the Davidson County Sheriff's Office in Nashville, Tennessee, filed this pro se action under 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* (ADA), and Title VI, 42 U.S.C. § 2000d, against Correct Care Solutions nurse Tammy Ruck, Chief of Security Chris Brown, Standards Officer Jason Saad, Hill Detention Center administrator Pam Hale, and Davidson County Sheriff's Office case manager Jessie Oliver, alleging violations of his federally protected rights. (Doc. No. 1).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A.

## I.    PLRA Screening Standard

Under 28 U.S.C. § 1915A, even if the prisoner paid the civil filing fee such as in this action, a district court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and shall dismiss any claims that are frivolous, malicious, or fail to state claims upon which relief may be granted.  Id.

1

The court must construe a pro se complaint liberally, United States v. Smotherman, 838 F.3d 736, 739 (6th Cir. 2016)(citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007)(citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the court's "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.    Motions

Along with his complaint, the Plaintiff has filed a letter (Doc. No. 5), three motions to amend his complaint (Doc. Nos. 8, 9, 10), two motions to add supplemental pleadings (Doc. Nos. 11, 12), and a motion for jury trial (Doc. No. 13).

In his October 2017 letter, the Plaintiff alleges that nurses at the Hill Detention Center retaliated against him for filing grievances about his lack of accommodations by transferring the plaintiff to another pod that was not handicapped-accessible.  (Doc. No. 5 at 1-2).  The Court construes the Plaintiff's letter as a motion to amend the original complaint.

In his motion to amend filed on December 27, 2017  (Doc. No. 8), the Plaintiff states that there "must have been a[] misunderstanding on the clerk/court part" because the Plaintiff  intended to name Correct Care Solutions and the Davidson County Sheriff's Office as Defendants.  (Id. at 1).  The Plaintiff also states that he now knows the name of two nurses he wants to name as Defendants, and he asks the Court to add Tara McBay, nurse supervisor, as a Defendant to the Plaintiff's discrimination and retaliation claims and April McQueen, nurse, as a Defendant to the

Plaintiff's retaliation claim.  (Id. at 1-2).

In his motion to amend filed on January 17, 2018 (Doc. No. 9), the Plaintiff adds additional facts about the claims set forth in his original complaint and in his previous motions to amend his complaint.

The "motion to amend complaint and add supplemental pleadings" received by the Court on February 12, 2018[1] (Doc. No. 10) as well as the motion to add supplemental pleadings (Doc. No. 11) received by the Court on the same date are duplicative of the Plaintiff's earlier filings.  As such, these motions will be denied.

The "motion to add supplemental pleading and defendants to my complaint" filed by the Plaintiff on February 6, 2018, clarifies that the Plaintiff wishes to add as Defendants the state of Tennessee; Metropolitan Government of Nashville and Davidson County, Tennessee (Metro Government); Davidson County Sheriff's Office; Correct Care Solutions; nurse supervisor Tara McBay; and nurse April McQueen.  (Doc. No. 12 at 1).  The Plaintiff also seeks to add claims under Tennessee state law.  (Id.)

Rule 15(a) (2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires."  In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.  Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1001 (6th Cir. 2005).

The proposed amendments to the complaint provide additional context for the claims raised

---

[1]The Plaintiff did not date his signature on the motion.

in the original complaint. The amendments also seek to add new defendants and claims. With respect to the futility of the amendments, the Court finds that the proposed amendments to the complaint raise legal and factual issues that the Court should consider when evaluating the Plaintiff's complaints concerning his incarceration at the Hill Detention Center and "MCC." There appears to be no undue prejudice to the opposing party by permitting the Plaintiff to amend his complaint at this time; no Defendants have been served. The Court therefore will grant the motions to amend and supplement (Doc. Nos. 5, 8, 9, and 12), and the Clerk will add Tara McBay, April McQueen, Davidson County Sheriff's Office, Metropolitan Government of Nashville and Davidson County, Tennessee (Metro), State of Tennessee, and Correct Care Solutions as Defendants to this action.

Finally, the Plaintiff's request to add a jury demand to his complaint (Doc. No. 13) will be granted.

The Court will screen the original complaint, as informed by the Plaintiff's amendments to the original complaint, pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A.

III. **Alleged Facts**

The complaint alleges that the Plaintiff is paralyzed and confined to a wheelchair. Upon arriving as an inmate of the Hill Detention Center in July 2017, the Plaintiff initially was placed in Pod-A that is not equipped for paralyzed inmates. After the Plaintiff's wife called and spoke with the Plaintiff's case manager, Jessie Oliver, the Plaintiff was moved to Pod-D, the jail's medical pod. However, Pod-D presented some of the same accommodation issues for the Plaintiff. The facility doctor placed an order on September 21, 2017, for the Plaintiff to receive a hospital style air mattress for his pressure issues, but the Plaintiff never received it. The Plaintiff believes that he contracted

scabies from his unsanitary mattress while he was housed in Pod-D for seventy days.

Correct Care Solutions nurse Tammy Ruck discussed the Plaintiff's medical information in front of a corrections officer, f/n/u Mulligan. The Plaintiff believes that this conversation violated his "HIPA" rights. (Doc. No. 1 at 3). The Plaintiff filed a grievance regarding his concern. Chief of Security Brown told the Plaintiff that his grievance "was not a grievance" and was instead a "case management request." (Id.) The grievance coordinator wrote to the Plaintiff that "[m]edical makes every effort to maintain confidentiality, however, security always comes first in this environment and security staff is held to the same standard of maintaining the confidentiality of any information they may overhear or be present during discussions while maintaining the security of the facility." (Doc. No. 9 at 8).

The Plaintiff is aware of an inmate, f/n/u Little, "of another race and color" who was moved into Pod-D on August 29, 2017, and provided with all of the accommodations the Plaintiff had requested, including a new mattress for pressure issues and assistance transferring to and from showers. When the Plaintiff told nurse supervisor Tara McBay that he was aware of the accommodations made for Little but not for Plaintiff, she stated, "And you're not!" (Doc. No. 8 at 1-2).

Standards Officer Saad told the Plaintiff to write a letter to Oliver concerning his accommodation needs, and the Plaintiff complied. Oliver, however, told the Plaintiff that she could not accept his letter until he completed a discrimination complaint form. The Plaintiff completed the discrimination complaint form and mailed it to the "Metro Human Relations Commission." (Doc. No. 1 at 1-2). Saad relayed to the Plaintiff in writing that, after reviewing his discrimination complaint, he had determined that the complaint did not fall under Title VII but that Saad's review

of the Plaintiff's ADA concerns was ongoing. Later, Saad relayed to the Plaintiff: "Upon inspection, the slope in the shower is not within the acceptable guidelines." (Doc. No. 1 at 8). The Plaintiff was permitted to take a shower in a nearby cell where Saad determined the slope was acceptable.

Immediately after the Plaintiff filed his grievance and discrimination complaint, the Plaintiff was moved from Pod-D (medical pod) back to Pod-A (general population). The Plaintiff initially refused to change pods, stating that he had been moved from Pod-A for medical reasons, and he was punished by being put on lockdown for five days. (Doc. No. 9 at 11). The Plaintiff believes the move was an act of retaliation by Correct Care Solutions nurses McQueen and McBay for the Plaintiff having spoken up about the lack of accommodations and discrimination.

The Plaintiff was subsequently transferred to the "MCC, a maximum security facility."[2] (Doc. No. 5 at 2). There, the Plaintiff's cell is not equipped with a toilet that the Plaintiff can use as a paralyzed man. He is required by facility staff to defecate in a bucket. The Plaintiff alleges that requiring him to defecate in a bucket "while everyone else here is accomodated [sic] with disposing of feces at the push of a button" is "humiliating," "unhygienic, and disgusting . . . ." (Id.) The Plaintiff alleges that feces "circulate[s] through [his] cell on the legs of flies, [g]nats, and in dust." (Id.) According to the Plaintiff, the staff at MCC is "well aware" of his housing needs because on October 18, 2017, two officers entered the Plaintiff's cell and recorded the conditions.

The Plaintiff is being denied adequate bedding that is needed for his pressure issues. The Plaintiff is never provided assistance with transferring to the toilet or shower. The Plaintiff contends: "Since July 4th of 2017, the Davidson County, Tennessee 'Metro' prisons I have been held

---

[2]It is unclear from the record whether MCC is part of the Hill Detention Center or whether MCC is a different facility altogether.

at have all been unequipped with the proper A.D.A. facilities for a disabled person as myself. But when I complained, they only helped the white inmate in my unit but ignored me." (Doc. No. 9 at 6).

## IV.    Analysis

The Plaintiff brings his federal claims pursuant to the ADA, 42 U.S.C. § 1983, and Title VI.

### A.    ADA Claims

The Plaintiff's claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* are based on his confinement for months in cells not equipped to address his needs as a paralyzed inmate confined to a wheelchair, including being forced to defecate in a bucket and being denied any assistance when transferring from his wheelchair to a shower.

The ADA prohibits public entities from discriminating against a qualified individual with a disability on account of that disability in the operation of services, programs, or activities. 42 U.S.C. § 12131(1); Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). The ADA is applicable to state and local government entities, including prisons and county jail facilities. See Yeskey, 524 U.S. at 210 (holding that the term "public entity" includes prison facilities); Tucker v. Tenn., 539 F.3d 526, 529 (6th Cir. 2008)(applying the ADA to a pretrial detainee's claims against a county jail facility). Title II's implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." 28 C.F.R. § 35.130(b)(7).

To establish a prima facie case under the ADA, a plaintiff must show that: (1) he has a

disability; (2) he is otherwise qualified; and (3) he is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under the program solely because of his ability. Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015). Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate § 12132. United States v. Ga., 546 U.S. 151, 160 (2006)(holding that Title II of the ADA validly abrogated state sovereign immunity insofar as it created a private cause of action for damages against the states for conduct that violates the Fourteenth Amendment).

The proper defendant to a suit under Title II of the ADA is the public entity or an official acting his or her official capacity. Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009). "Title II of the ADA does not, however, provide for suit against a public official in his individual capacity." Everson, 556 F.3d at 501 n.7; see also Williams v. McLemore, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities. . . . We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."). Therefore, the Plaintiff's ADA claims against the named Defendants in their individual capacities must be dismissed.

The Plaintiff also names the Metro Government as a Defendant to the Plaintiff's ADA claims. Given the liberal construction afforded to *pro se* complaints, and the requirement that the Court construes all well-pleaded allegations in the light most favorable to the Plaintiff, the Court finds that the Plaintiff's allegations state an ADA claim against the Metropolitan Government of Nashville and Davidson County, Tennessee, the entity responsible for the operation of the Hill Detention Center and the MCC.[3]  See 28 C.F.R. § 35.133(a) (requiring public entities to "maintain

---

[3]The question of whether the MCC is separate from, or part of, the Hill Detention Center, needs to be resolved upon referral to the Magistrate Judge.

in operable working condition those features of facilities and equipment that are required to be readily accessible and usable by persons with disabilities" as provided for by the ADA or the regulations implementing the ADA); see also Kutrip v. City of St. Louis, 329 Fed. Appx. 683 (8th Cir. 2009) (denying summary judgment where facts issue remained on ADA claim regarding jail officials' denial of disabled-accessible shower and shower chair to obviously disabled inmate); Doker v. Montgomery County Jail, No. 3:17-cv-00947, 2017 WL 3172745, at *3 (M.D. Tenn. July 26, 2017)(Trauger, J.)(on initial review under PLRA, finding a colorable ADA claim against the county based on inmate's confinement to cell not equipped to meet his needs while he was confined to a wheelchair); Schmidt v. Odell, 64 F. Supp.2d 1014, 1032 (D. Kan. 1999)(denying summary judgment on inmate's ADA claim against jail where plaintiff, a double amputee, was not provided a wheelchair and had to crawl and push himself about the jail on the floor; "The fact the plaintiff was actually able to use most of the jail services does not preclude his claim in light of the fact that he was able to do so only by virtue of exceptional and painful exertion which was contrary to physician's instructions concerning his disability."). Therefore, the Court finds that the Plaintiff's ADA claim against the Metro Government will proceed for further development.

### B. Section 1983 Claims

The Plaintiff's remaining federal claims are brought pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Dominguez v. Corr. Med. Servs., 555 F.3d 543,

549 (6th Cir. 2009)(quoting Sigley v. City of Panama Heights, 437 F.3d 527, 533 (6th Cir. 2006));
42 U.S.C. § 1983.

### 1.    Failure to respond to grievances claims

Although the Plaintiff may feel that his grievances were not taken seriously or handled properly, a plaintiff cannot premise a § 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place.  See Hewitt v. Helms, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  Because a prisoner does not have a constitutional right to an effective or responsive grievance procedure, any claim raised by the Plaintiff based on any Defendant's failure to respond to his grievances does not state a claim upon which relief can be granted.

### 2.    Disclosure of medical information claims

The complaint alleges that Defendant Ruck, a nurse, discussed the Plaintiff's confidential medical information in front of a corrections officer.  (Doc. No. 1 at 3).  The Plaintiff believes that Ruck's disclosure violated the Plaintiff's "HIPA" rights.  (Id.)  The Plaintiff field a grievance about his concern, which  Chief of Security Brown denied.  (Id.)

The Sixth Circuit Court of Appeals recognizes that a constitutional right to privacy in one's medical information exists for inmates.  Moore v. Prevo, No. 09-1307,  2010 WL 1849208, at *3 (6th Cir. May 6, 2010)(internal citations omitted).  However, the Court limited its holding, acknowledging that  "a prisoner does not enjoy a right of privacy in his medical information to the

same extent as a free citizen." <u>Id.</u>  The Court held that, "as a matter of law, inmates have a Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information **from other inmates** subject to legitimate penological interests."  <u>Id.</u> (internal citations omitted)(emphasis added).   Thus, if the complaint alleged disclosure of the Plaintiff's confidential medical information by one or more Defendants to other inmates, the Plaintiff under <u>Moore</u> would state a colorable Fourteenth Amendment privacy claim.  However, the Plaintiff here does not allege that his confidential medical information was disclosed to other inmates; he alleges only that his information was overheard by a corrections officer.  As a result, the complaint fails to state an actionable Fourteenth Amendment privacy claim against Ruck.

With respect to the complaint's allegations that the Plaintiff's "HIPA" rights were violated, the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996)(codified primarily in Titles 18, 26, and 42 of the United States Code) (HIPAA), "creates neither an express nor an implied cause of action for private citizens to enforce its terms." <u>Thomas v. Univ. of Tenn. Health Science Ctr.</u>, No. 2:17-cv-02263-SHM-tmp, 2017 WL 2570907, at * (W.D. Tenn. June 14, 2017)(citing <u>White v. Stephens</u>, No. 13-cv-2173-JDT-tmp, 2014 WL 726991, at *9 (W.D. Tenn. Jan. 14, 2014) (citing <u>Wilson v. Memphis Light, Gas & Water</u>, No. 12-2956-STA-tmp, 2013 WL 4782379, at *3 (W.D. Tenn. Sept. 5, 2013) (collecting cases from Courts of Appeals in multiple circuits)); <u>see also Johnson v. Kuehne & Nagel Inc.</u>, No. 11-cv-02317-STA-cgc, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012) ("HIPAA regulations do not confer a private right of action on an individual.")). Rather, penalties for HIPAA violations are imposed by the Secretary of Health and Human Services (the "Secretary").  <u>See</u> 42 U.S.C. § 1320d-5(a)(1). If a person believes that a covered entity or business associate is not complying with

HIPAA, his only recourse is to file a complaint with the Secretary. See 45 C.F.R. § 160.306; see also Kuehne, 2012 WL 1022939, at *5 ("Plaintiff's only redress for an alleged HIPAA violation is to lodge a written complaint with the Secretary of Health and Human Services[.]"). Accordingly, because no private right of action exists pursuant to HIPAA, the complaint fails to state a claim under HIPAA upon which relief can be granted. Any such claims, including the Plaintiff's claims against Ruck and Brown, will be dismissed.

### 3. Equal Protection Claims

The complaint alleges that Defendants McBay, McQueen, Ruck, Brown, Hale, Correct Care Solutions, Davidson County Sheriff's Office, and Metro Government have denied and continue to deny the Plaintiff equal treatment under the law in violation of the Fourteenth Amendment to the United States Constitution and Title VI. (Doc. No. 1 at 1). "The Equal Protection Clause prohibits states from 'mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.'" Coleman v. Governor of Mich., 413 Fed.Appx. 866, 877 (6th Cir. 2011) (per curiam) (quoting Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005)) (citing Vacco v. Quill, 521 U.S. 793, 799 (1997)). Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The protection provided by Title VI is basically co-extensive with that provided by the equal protection clause. See Watkins v. CCA, No. 3:12-cv-984, 2012 WL 5904751, at *2 & n.1 (M.D. Tenn. Nov. 26, 2012)(citing Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1405 n.11 (11th Cir.1993) (noting that Title VI "provides no more protection than

the equal protection clause," and therefore that a separate discussion of the plaintiff's Title VI claims would "duplicate exactly our equal protection analysis")). Therefore, the Court will analyze the Plaintiff's claims under the equal protection clause.

To the extent the Plaintiff asserts that he is a member of a suspect class, the Plaintiff alleges that Defendant McBay, a state actor, intentionally discriminated against the Plaintiff because of his race and/or national origin. Race and national origin are classic examples of suspect classes. See Doe #1 by and through Lee v. Sevier County, Tenn., No. 3:17-CV-41, 2017 WL 3038144, at *7 (E.D. Tenn. July 17, 2017)(citing Personnel Admin'r of Mass. v. Feeney, 442 U.S. 256, 272-73 (1979)).

To a state a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment, the Plaintiff must plead "sufficient facts to show 'that a state actor intentionally discriminated against [him] because of membership in a protected class.'" Brand v. Motley, 526 F.3d 921, 924 (6th Cir. 2008)(quoting Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir. 1990)). Here, the Plaintiff alleges that Defendant McBay treated him differently than a similarly situated white inmate, and that the differential treatment was racially based. The Plaintiff alleges that, when he questioned McBay as to why an inmate of another race and color had received all of the accommodations the Plaintiff had requested but had been denied, McBay's comment ("And you're not!") suggested that she never intended for the Plaintiff to receive the accommodations. (Doc. No. 8 at 1-2). Assuming for purposes of this screening that McBay has authority to deny and grant accommodations to inmates, her response to the Plaintiff could give rise to an inference that the alleged disparate treatment by McBay was racially motivated. The Court therefore finds that the Plaintiff's allegations state a colorable claim against Defendant McBay in her individual capacity

for violation of the Plaintiff's equal protection rights.

The complaint, however broadly construed, fails to state a colorable claim against Defendants McQueen, Ruck, Brown or Hale, as it does not assert that these Defendants were personally involved in the allegedly discriminatory acts. Brown and Hale appear to have some supervisory authority. "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability." Miller v. Calhoun Cnty., 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.1984). The Plaintiff here has not alleged that Brown or Hale committed any discriminatory acts, nor has he averred that these Defendants acquiesced in the conduct of employees under their supervision.

As to Defendant Saad, the complaint alleges only that he denied the Plaintiff's Title VI discrimination complaint, finding that "the complaint does not fall under Title VI." (Doc. No. 1 at 7). This allegation, without more, is insufficient to demonstrate the kind of personal involvement in an allegedly discriminatory action that is necessary to sustain an equal protection claim.

As to Defendant Correct Care Solutions, the complaint does not contain any allegations that Correct Care Solutions's policies or procedures generally are discriminatory. Rather, the Plaintiff apparently seeks to hold Correct Care Solutions liable for the acts of its employees merely on the basis that Correct Care Solutions is the employer. Liability under § 1983 cannot be imputed to employers based on the actions of their employees; rather, a claim must be based on the discriminatory policies or actions of the entity itself. See Grimes v. Superior Home Health Care of

Middle Tenn., Inc., 929 F. Supp. 1088, 1092 (M.D.Tenn.1996) ("To state a claim for damages under 42 U.S.C. § 2000d, et seq., a plaintiff must allege that . . . the entity involved is engaging in racial discrimination . . . ." ); Miller v. Calhoun Cnty., 408 F.3d 803, 817 n.3 (6th Cir. 2005)(respondeat superior liability is not available under § 1983). Therefore, the Court finds that the complaint fails to state an equal protection claim against Correct Care Solutions.

The Davidson County Sheriff's Office is not a suable entity under § 1983. See Mathes v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:10–cv–0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit.")(collecting cases)). Thus, the Plaintiff's claims against the Davidson County Sheriff's Office must be dismissed.

Finally, while Metro Government is a suable entity, it is responsible under § 1983 only for its "own illegal acts. [It is] not vicariously liable under § 1983 for [its] employees' actions." Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal citations and quotation marks omitted). Under § 1983, a municipality can only be held liable if the plaintiff demonstrates that the alleged federal violation was a direct result of the city's official policy or custom. Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir.2013) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); Regets v. City of Plymouth, 568 Fed. Appx. 380, 2014 WL 2596562, at *12 (6th Cir. 2014) (quoting Slusher v. Carson, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the

15

existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. Burgess, 735 F.3d at 478.

Here, the complaint fails to allege the existence of a policy, custom, or practice at the Hill Detention Center and MCC of discriminating against non-white inmates with respect to their medical care or disability status. Accordingly, the Court finds that the complaint fails to state an equal protection claim against Metro Government.

### 4.      Eighth Amendment Claims

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994)(collecting cases); Grubbs v. Bradley, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984).

Here, the Plaintiff's claims against Oliver, Saad, Hale, Davidson County Sheriff's Office, and Metro Government are premised on these Defendants' failure to place or transfer the Plaintiff to a handicapped-accessible cell as well as on the conditions of the cells in which the Plaintiff was confined. As to Defendants Correct Care Solutions, McQueen, and McBay, the Plaintiff's claims are premised on the alleged retaliatory transfer of the Plaintiff from the medical pod to non-handicapped accessible  cells.

The Eighth Amendment protects against conditions of confinement that constitute serious health or safety threats, but not against those that cause mere discomfort or inconvenience. Hudson

v. McMillian, 503 U.S. 1, 8 (1992). An inmate "cannot expect the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988), quoted in Thaddeus–X v. Blatter, 175 F.3d 378, 405 (6th Cir. 1999). While prison conditions may be "restrictive and even harsh," they do not violate the constitution unless they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). In the context of a conditions-of-confinement claim, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). For challenged jail conditions to qualify as extreme, they must have resulted in "the deprivation of [at least one] identifiable human need such as food, warmth, or exercise— for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991).

Further, in the Eighth Amendment context, "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." Horn v. Madison Cnty. Fiscal Court, 22 F.3d 653, 659 (6th Cir. 1994). Besides the long-standing legal requirement of an "injury" in case law concerning prisoner complaints, Congress acted to further limit prisoner suits to only a specific kind of injury. Under the PLRA, a lawsuit brought by an institutionalized person requires a "physical" injury in order to permit recovery: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury need not be significant, but it must be more than de

minimis for an Eighth Amendment claim to proceed. See Adams v. Rockafellow, 66 Fed.Appx. 584, 586 (6th Cir. 2003) (citing Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)). The Court finds that, for purposes of the PLRA screening, the allegations of the complaint are sufficient to satisfy the requirement for an injury arising from the lack of sanitation in the Plaintiff's MCC cell.

The Plaintiff's claims about his being confined for months in a cell not equipped to address his needs as an inmate confined to a wheelchair are even more concerning. "As a society, we have grown increasingly sensitive to the need to accommodate individuals with disabilities," and courts have repeatedly found that the failure to provide handicapped-accessible facilities to inmates may violate the Constitution. Stoudemire v. Mich. Dept. of Corr., 614 Fed.Appx. 798, 803 (6th Cir. 2015) (quoting Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998)). The safety risks associated with confining a handicapped inmate in a cell not equipped for his needs has a level of "obviousness" sufficient to satisfy the objective and subjective elements of a claim for deliberate indifference. Id. at 803-04. Moreover, with regard to Defendants McQueen and McBay, the complaint alleges that these Defendants intentionally moved the Plaintiff into a non-handicapped accessible cell in retaliation for the Plaintiff having filed grievances; these allegations most clearly support a claim of deliberate indifference. Therefore, the Court finds that the complaint states actionable Eighth Amendment claims against Defendants Saad, Hale, Oliver, McQueen, and McBay in their individual capacities based on their roles in the Plaintiff's placement in non-handicapped accessible cells while housed at the Hill Detention Center and MCC and the conditions of confinement in those cells.

The complaint also names the state of Tennessee, Correct Care Solutions, the Davidson County Sheriff's Office, and Metro as Defendants to these claims. As to the State of Tennessee, the Eleventh Amendment to the United States Constitution prohibits suits against a state in federal

court for damages. Kentucky v. Graham, 473 U.S. 159, 169-70 (1985). Furthermore, a state is not a person within the meaning of § 1983. Will v. Michigan, 491 U.S. 58, 71 (1989)("We hold that neither a State nor its officials acting their official capacities are 'persons' under § 1983."). The Plaintiff's claims against the State of Tennessee, therefore, are barred by the Eleventh Amendment and do not fall within the purview of § 1983. See Horton v. Martin, 137 F. App'x 773, 775 (6th Cir. 2005) (dismissing damages claim against state parole board under the Eleventh Amendment)(citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984)). In any event, the Plaintiff has not alleged any specific personal involvement by the State of Tennessee in the events described in the complaint. A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, Miller v. Calhoun Cnty., 408 F.3d 803, 827 n.3 (6th Cir. 2005); Dunn v. Tennessee, 697 F.2d 121, 128 (6th Cir. 1982). Thus, the Plaintiff's claims against the State of Tennessee fail to state claims upon which relief can be granted.

Next, because the Davidson County Sheriff's Office is not a suable entity under § 1983, Mathes, 2010 WL 3341889, at *2, the Plaintiff's claims against the Davidson County Sheriff's Office must be dismissed. Similarly, the Plaintiff fails to state a claim against Correct Care Solutions, the entity that presumably contracts to provide medical care in the jail. Although a private corporation that performs a traditional state function acts under the color of state law for purposes of § 1983, it cannot be found liable solely on the basis of respondeat superior. Thomas v. Coble, 55 Fed. Appx. 748, 748–49 (6th Cir. 2003). For the corporation to be liable, an inmate must prove that his injury was caused by an action taken pursuant to some official policy or custom. Id. at 749 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)); see also Street v. Corr. Corp. of Am., 102 F.3d 810, 817 (6th Cir. 1996). The Plaintiff does not allege that any policy or custom of

Correct Care Solutions played any role in his cell assignments or his allegedly inadequate medical care.

With respect to Metro Government, as noted above, it is responsible under § 1983 only for its "own illegal acts. [It is] not vicariously liable under § 1983 for [its] employees' actions." Connick, 563 U.S. at 60 (internal citations and quotation marks omitted). That is to say, Metro Government can only be held liable if the Plaintiff demonstrates that the alleged federal violation was a direct result of the entity's official policy, custom, or practice. See Burgess, 735 F.3d at 478. Construing the pro se complaint liberally, the Court finds that the complaint alleges the existence of a policy, custom, or practice at the Hill Detention Center and MCC of placing handicapped inmates in non-handicapped accessible cells, the conditions of which are unsuitable. Accordingly, the Court finds that the complaint states a claim for municipal liability against Metro Government based on this policy, custom, or practice, and this claim shall proceed for further development.

### 4. Retaliation claims

The complaint names nurses McBay and McQueen as Defendants to the Plaintiffs' retaliation claims. (Doc. No. 1 at 14). A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (en banc). To establish a prima facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. Id. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive

in nature by showing other than <u>de minimis</u> harm resulting from it. See Ingraham v. Wright, 430 U.S. 651, 674 (1977); <u>Thaddeus-X</u>, 175 F.3d at 396.

The complaint specifically alleges that Defendants McBay and McQueen retaliated against the Plaintiff for filing grievances by moving the Plaintiff from an infirmary cell to two different non-handicapped accessible cells. (Id.) Filing non-frivolous inmates grievances is protected conduct under the First Amendment. See Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007). The Court finds that placing the Plaintiff, a paralyzed inmate, in a non-handicapped accessible cell, especially one in which the Plaintiff must defecate in a bucket, constitutes an adverse action under <u>Thaddeus-X</u>. As to causation, the complaint alleges that the Plaintiff had been in Pod-D for seventy days without incident and "was suddenly removed (once the nurses became aware of [his] grievances and complaint). (Doc. No. 5 at 1-2). The Court therefore finds that the complaint sufficiently alleges that the Defendants' conduct was substantially motivated at least in part by the Plaintiff's protected speech and conduct. Although it is unclear at this early state of the proceedings whether the Plaintiff ultimately can prevail on his retaliation claims, the Court finds that the Plaintiff's allegations withstand the required frivolity review. These § 1983 retaliation claims will be permitted to proceed for further development against Defendants McQueen and McBay in their individual capacities.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE