IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| CARLOS COLDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-01296 |
| ) | Judge Crenshaw / Frensley |
| METROPOLITAN GOVERNMENT, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon a Motion for Summary Judgment filed by Defendants' Metropolitan Government, Pam Hale, Jessie Oliver, and Jason Saad ("Defendants").[1] Docket No. 27. Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 28), a Statement of Undisputed Material Facts (Docket No. 29), and the Declaration of Tom Davis with Exhibits (Docket Nos. 30 - 30-7).

Plaintiff has not responded to Defendants' Motion or Statement of Undisputed Material Facts, nor has he filed his own Statement of Undisputed Material Facts.

Plaintiff, pro se, filed the instant action pursuant to the Americans With Disabilities Act, 42 U.S.C. §12131, et seq. ("the ADA"), 42 U.S.C. §1983, and 42 U.S.C. §2000d ("Title VI"). Judge Crenshaw, in his Memorandum Opinion issued May 14, 2018, summarized the operative

---

[1] Metropolitan Government, Pam Hale, Jessie Oliver, and Jason Saad are the only remaining served Defendants in this action. Judge Crenshaw, in his Order entered May 14, 2018, dismissed Tammy Ruck, Chris Brown, Correct Care Solutions, the Davidson County Sheriff's Office, and the State of Tennessee as Defendants and they have been terminated as parties to this action. *See* Docket No. 15. Tara McBay and April McQueen have not been served.

facts of Plaintiff's various submissions and amendments to his Complaint as follows:

> The Complaint alleges that the Plaintiff is paralyzed and confined to a wheelchair. Upon arriving as an inmate of the Hill Detention Center in July 2017, the Plaintiff initially was placed in Pod-A that is not equipped for paralyzed inmates. After the Plaintiff's wife called and spoke with the Plaintiff's case manager, Jessie Oliver, the Plaintiff was moved to Pod-D, the jail's medical pod. However, Pod-D presented some of the same accommodation issues for the Plaintiff. The facility doctor placed an order on September 21, 2017, for the Plaintiff to receive a hospital style air mattress for his pressure issues, but the Plaintiff never received it. The Plaintiff believes that he contracted scabies from his unsanitary mattress while he was housed in Pod-D for seventy days.
>
> Correct Care Solutions nurse Tammy Ruck discussed the Plaintiff's medical information in front of a corrections officer, f/n/u Mulligan. The Plaintiff believes that this conversation violated his "HIPA" rights. (Doc. No. 1 at 3). The Plaintiff filed a grievance regarding his concern. Chief of Security Brown told the Plaintiff that his grievance "was not a grievance" and was instead a "case management request." (Id.) The grievance coordinator wrote to the Plaintiff that "[m]edical makes every effort to maintain confidentiality, however, security always comes first in this environment and security staff is held to the same standard of maintaining the confidentiality of any information they may overhear or be present during discussions while maintaining the security of the facility." (Doc. No. 9 at 8).
>
> The Plaintiff is aware of an inmate, f/n/u Little, "of another race and color" who was moved into Pod-D on August 29, 2017, and provided with all of the accommodations the Plaintiff had requested, including a new mattress for pressure issues and assistance transferring to and from showers. When the Plaintiff told nurse supervisor Tara McBay that he was aware of the accommodations made for Little but not for Plaintiff, she stated, "And you're not!" (Doc. No. 8 at 1-2).
>
> Standards Officer Saad told the Plaintiff to write a letter to Oliver concerning his accommodation needs, and the Plaintiff complied. Oliver, however, told the Plaintiff that she could not accept his letter until he completed a discrimination complaint form. The Plaintiff completed the discrimination complaint form and mailed it to the "Metro Human Relations Commission." (Doc. No. 1 at 1-2). Saad relayed to the Plaintiff in writing that, after

2

> reviewing his discrimination complaint, he had determined that the complaint did not fall under Title VII but that Saad's review of the Plaintiff's ADA concerns was ongoing. Later, Saad relayed to the Plaintiff: "Upon inspection, the slope in the shower is not within the acceptable guidelines." (Doc. No. 1 at 8). The Plaintiff was permitted to take a shower in a nearby cell where Saad determined the slope was acceptable.
>
> Immediately after the Plaintiff filed his grievance and discrimination complaint, the Plaintiff was moved from Pod-D (medical pod) back to Pod-A (general population). The Plaintiff initially refused to change pods, stating that he had been moved from Pod-A for medical reasons, and he was punished by being put on lockdown for five days. (Doc. No. 9 at 11). The Plaintiff believes the move was an act of retaliation by Correct Care Solutions nurses McQueen and McBay for the Plaintiff having spoken up about the lack of accommodations and discrimination.
>
> The Plaintiff was subsequently transferred to the "MCC, a maximum security facility." (Doc. No. 5 at 2). There, the Plaintiff's cell is not equipped with a toilet that the Plaintiff can use as a paralyzed man. He is required by facility staff to defecate in a bucket. The Plaintiff alleges that requiring him to defecate in a bucket "while everyone else here is accomodated [sic] with disposing of feces at the push of a button" is "humiliating," "unhygienic, and disgusting . . . " (Id.) The Plaintiff alleges that feces "circulate[s] through [his] cell on the legs of flies, [g]nats, and in dust." (Id.) According to the Plaintiff, the staff at MCC is "well aware" of his housing needs because on October 18, 2017, two officers entered the Plaintiff's cell and recorded the conditions.
>
> The Plaintiff is being denied adequate bedding that is needed for his pressure issues. The Plaintiff is never provided assistance with transferring to the toilet or shower. The Plaintiff contends: "Since July 4th of 2017, the Davidson County, Tennessee 'Metro' prisons I have been held at have all been unequipped with the proper A.D.A. facilities for a disabled person as myself. But when I complained, they only helped the white inmate in my unit but ignored me." (Doc. No. 9 at 6).

Docket No. 14, p. 4-7 (footnotes omitted).

Upon completion of his initial review of this matter conducted pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §1915A, Judge Crenshaw, in his Order entered May

14, 2018, struck all of Plaintiff's claims except the following: 1) Plaintiff's ADA claim against Metro Government; 2) Eighth Amendment §1983 claims against Defendants Saad, Hale, Oliver, McQueen, and McBay in their individual capacities;[2] and 3) Eighth Amendment claims against Metro Government. Docket No. 15. Accordingly, these claims are the only claims now before the Court.

Defendants filed the instant Motion for Summary Judgment and supporting materials on August 16, 2018, arguing that they are entitled to Summary Judgment because Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a). Docket Nos. 27 - 30-7.

For the reasons set forth below, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 27) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

## II. Undisputed Facts[3]

From July 4, 2017 to March 13, 2018, Plaintiff was an inmate incarcerated at facilities maintained by the Davidson County Sheriff's Office ("DCSO"). Docket No. 30, Declaration of Tom Davis, Records Manager for the DCSO ("Davis Dec."), ¶ 2.

DCSO Policy #1-3.540 governs inmate grievances. *Id.*, ¶ 3, *citing* Ex. 1 attached thereto. According to Policy #1-3.540, complaints about specific incidents must be filed within seven (7)

---

[2] Judge Crenshaw also allowed to proceed Plaintiff's Fourteenth Amendment Equal Protection claim against Defendant McBay in her individual capacity and Plaintiff's First Amendment retaliation claims against Defendants McBay and McQueen in their individual capacities. Docket No. 15. Tara McBay and April McQueen have not, however, been served.

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

4

days of the incident, and complaints about policies or practices must be filed within seven (7) days of the most recent time the inmate was affected. Exhibits 1, 2. Once the inmate submits the grievance, it is given to a grievance coordinator, who assigns it to a respondent. *Id.* Once the investigation of the grievance has been completed, the respondent will close the case and inform the inmate of the results of the grievance, including a finding of "sustained" or "unsustained." *Id.* If the inmate is dissatisfied with the grievance response, he or she may appeal the response within five (5) working days to the facility administrator or appropriate chief, who will then answer it within seven (7) working days. *Id.*

Inmates at DCSO have access to the information in the inmate handbook that includes a summary of the inmate grievance process. Davis Dec., ¶ 3, *citing* Ex. 2 attached thereto.

Records Manager Davis has access to, and is a custodian of, the grievance records maintained by the DCSO, including grievance appeals, all of which are created and maintained in the normal course and scope of DCSO's business by persons whose duties include the creation, compilation and/or retention of DCSO grievance records. *Id.*, ¶ 4. Records Manager Davis has reviewed all of the inmate grievances for Plaintiff during the period of his incarceration at DCSO. *Id.*, ¶ 5.

On August 2, 2017, Plaintiff filed Grievance #222815, which was addressed to case management officer Jessie Oliver and related to his time served credits. *Id.*, ¶ 6, *citing* Ex. 3, attached thereto. That grievance was found to be unsustained. *Id.* Plaintiff did not appeal that finding. *Id.*

On August 29, 2017, Plaintiff filed Grievance #223538, which was against a Correct Care Solutions employee ("nurse Tammy") regarding his accommodations. *Id.*, ¶ 7, *citing* Exs. 4, 5

attached thereto. That grievance was found to be unsustained. *Id.* Plaintiff did not appeal that finding. *Id.*

On September 26, 2017, Plaintiff filed Grievance #224210, which was related to being moved for purposes of retaliation. *Id.*, ¶ 8, *citing* Exs. 6, 7 attached thereto. That grievance was found to be unsustained. *Id.* Plaintiff did not appeal that finding. *Id.*

Other than the grievances set forth herein, Plaintiff did not file any other grievances related to the subject matter of the court filings in this matter. *Id.*, ¶ 9. Plaintiff has never filed a grievance against Pam Hale or Jason Saad. *Id.*, ¶ 10.

### III. Law and Analysis

**A. Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on August 16, 2018. Docket No. 27. Plaintiff has failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the

> fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

As discussed above, Plaintiff has failed to respond to Defendants' Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

### B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

### C. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42

U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*,

534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

## D. The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that, at all times relevant to the instant action, DCSO Policy #1-3.540 governs inmate grievances, and that according to Policy #1-3.540, complaints about specific incidents must be filed within seven (7) days of the incident, and complaints about policies or practices must be filed within seven (7) days of the most recent time the inmate was affected. It is further undisputed that once the inmate submits the grievance, it is given to a grievance coordinator, who assigns it to a respondent; that once the investigation of the grievance has been completed, the respondent will close the case and inform the inmate of the results of the

grievance, including a finding of "sustained" or "unsustained"; and that if the inmate is dissatisfied with the grievance response, he or she may appeal the response within five (5) working days to the facility administrator or appropriate chief, who will then answer it within seven (7) working days. *Id.* It is also undisputed that inmates at DCSO have access to the information in the inmate handbook that includes a summary of the inmate grievance process.

As relates to Plaintiff specifically, it is undisputed that Plaintiff filed Grievance #222815 on August 2, 2017, Grievance #223538 on August 29, 2017, and Grievance #224210 on September 26, 2017; that each of these grievances was found to be "unsustained"; and that Plaintiff did not appeal any of these findings. Finally, it is undisputed that Plaintiff did not file any other grievances related to the subject matter of the court filings in this matter, and has never filed a grievance against Pam Hale or Jason Saad. Thus, Plaintiff has failed to exhaust his administrative remedies as required under the PLRA. Accordingly, his claims should be dismissed.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 27) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
JEFFERY S. FRENSLEY
United States Magistrate Judge